WILLIAM L. MARDER, ESQ. (CBN 170131)
**PAXTON ♦ O'BRIEN LLP**
Attorneys At Law
350 Fifth Street
Hollister, CA 95023
(831) 637-5521

Attorneys for Plaintiff Stanner Air, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

C03 00374 HRL

| | |
|---|---|
| STANNER AIR, INC. | ) Case No.: |
| Plaintiffs, | ) COMPLAINT FOR DAMAGES |
| v. | ) |
| WESLEY CODDOU, PETER KIM, ST. JOHN AEM, INC and DOES 1 through 10, inclusive, | ) |
| Defendants. | ) |

Plaintiff alleges:

## PARTIES

1.   Plaintifff Stanner Air, Inc., is a Corporation, licensed to do business in California, with its principal place of business in San Juan Bautista, California.

2.   Defendant Wesley Coddou is an individual residing in Houston, Texas.

3.   Defendant Peter Kim is an individual residing in Manhatten Beach, California.

---

1

COMPLAINT FOR DAMAGES

P:\PO LLP\Bill\Coddou\Complaint.doc

4. Defendant St. John AEM, Inc. ("AEM") is a business organization, form unknown.

5. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-10, inclusive, and therefore sues these defendants by these fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

## JURISDICTION

6. This Court has subject matter jurisdiction to adjudicate plaintiff's claims against the defendants pursuant to 28 U.S.C. § 1331. This court has original jurisdiction over this case and controversy because this action is related to and arises out of alleged violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77((c) and 77q(a)and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] as amended and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder.

7. In addition to the foregoing, this Court has personal jurisdiction over the Defendants pursuant to 15 U.S.C. § 78aa, which provides nationwide service of process where "any act or transaction constituting the [securities] violation occurred." The Defendants have minimum contacts with the United States so that they may be served and subject to process pursuant to 15 U.S.C. § 78aa.

## VENUE

8. Venue is proper in this Court because, as discussed in detail below, defendants acted as co-conspirators and committed an act or transaction in furtherance of the

conspiracy in the Northern District of California. Defendants solicited plaintiff's investment and accepted plaintiff's money while plaintiff remained in the Northern District of California. Additionally, defendants mailed documents to plaintiff in San Benito County.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

9. Defendants Peter Kim and Wesley Coddou solicited investments in St. John AEM, Inc. ("AEM".)

10. Defendants Peter Kim and Wesley Coddou represented to investors that AEM traded in bank notes and offered investors very high returns with no risk.

11. To encourage plaintiff to invest, defendants Peter Kim and Wesley Coddou promised plaintiff a return of between two million dollars and four million dollars to be paid within ninety days of the investment.

12. Defendants Peter Kim and Wesley Coddou further promised plaintiff that the investment involved absolutely no risk. Defendants Peter Kim and Wesley Coddou guaranteed that plaintiff's principal would be held in a trust and would be returned not more than 30 days from the date of the deposit. This guarantee is memorialized in a Trust Agreement & Guaranty executed by defendants Wesley Coddou and Peter Kim. A true copy of this Trust Agreement and Guaranty is attached to this complaint as Exhibit A and made a part of it by this reference.

13. Defendants Peter Kim and Wesley Coddou further guaranteed charitable contributions to the Bangledesh Christian School for an amount of up to twenty nine million dollars and to Volunteer Health Professionals on the Island of Fiji for an amount up to five million dollars.

14. On or about October 8, 2001 plaintiff and defendants entered into a security agreement consisting of a promissory note. A true copy of this agreement (hereinafter referred to as the "Agreement") is attached to this complaint as Exhibit B and made a part of it by this reference.

15. The subject agreement constitutes an investment contract. The subject agreement directs plaintiff to be entirely passive yet allows plaintiff to profit from the investment. Thus, the subject agreement constitutes a "security" within the meaning of federal securities laws.

16. According to the provisions of the Agreement, plaintiff agreed to invest $150,000. Additionally, on or about November 11, 2001, plaintiff invested an additional $50,000 in the identical investment discussed in the Agreement. A true copy of the Wire Transfer reflecting the November 11, 2001, $50,000 investment is attached to this complaint as Exhibit C and made a part of it by this reference.

17. Defendants have paid no money whatsoever to plaintiff.

18. Defendants have failed to honor plaintiff's requests for the return of the principal.

19. Defendants have made no contributions to the Bangledesh Christian School or to the Volunteer Health Professionals on the Island of Fiji.

20. Defendants have made numerous lulling statements to plaintiff, stating that the money would be paid soon.

21. Funds collected by defendants were not used to invest in bank notes and were removed from the trust account. Rather, plaintiff's funds were used for the personal benefit of the defendants.

COMPLAINT FOR DAMAGES

## First Cause of Action
### (Violation of Section 10(b) of the Exchange Act and Rule 10-5)

22. Plaintiff realleges and incorporates by reference all allegations contained in the above paragraphs 1 through 21, inclusive.

23. Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, no misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchases, prospective purchases and other persons.

24. As a part of and in furtherance of their scheme, defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state in light of the circumstances under which they were made, not misleading, including, but not limited to those set forth in Paragraphs 1 through 21 above.

25. Defendants made the above-referenced misrepresentations and omissions knowingly or grossly recklessly disregarding the truth.

26. By reason of the forgeong, defendants have violated and, unless enjoined, will continue to violate the provisions of Sections 19(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## Second Cause of Action
### (Violations of Section 17(a) of the Securities Act)

27. Plaintiff realleges and incorporates by reference all allegations contained in the above paragraphs 1 through 26, inclusive.

28. Defendants, directly or indirectly, singly, in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

29. As part of and in furtherance of this scheme, defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those statements and omissions set forth in paragraph 1 through 21 above.

30. Defendants made the above-referenced misrepresentations and omissions knowingly or grossly recklessly disregarding the truth.

31. By reason of the foregoing, defendants have violated Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### Third Cause of Action
### (Violations of Section 15(a)(1) of the Exchange Act)

32. Plaintiff realleges and incorporates by reference all allegations contained in the above paragraphs 1 through 31, inclusive.

33. At the times alleged in this Complaint, defendants have been in the business of effecting transaction in securities for the accounts of others.

34. Defendants made use of the mails and of the means and instrumentalities of interstate commerce to effect transactions in and to induce or attempt to induce the purchase of securities.

35. At the times alleged in this Complaint, none of the defendants were registered with the Securities And Exchange Commission as a broker or dealer, as required by section 15(b) of the Exchange Act [15 U.S.C. §780(a)(1)].

36. By reason of the foregoing, defendants have violated section 15(a)(1) of the Exchange Act [15 U.S.C. §780(a)(1)].

### Fourth Cause of Action
### (Default Under Security Agreement)

37. Plaintiff realleges and incorporates by reference all allegations contained in the above paragraphs 1 through 36, inclusive.

38. On or about October 8, 2001 plaintiff and defendants entered into a security agreement consisting of a promissory note. A true copy of this agreement (hereinafter referred to as the "Agreement") is attached to this complaint as Exhibit B and made a part of it by this reference.

39. According to the provisions of the Agreement, plaintiff agreed to invest $150,000. Additionally, on or about November 11, 2001, plaintiff invested an additional $50,000 in the identical investment discussed in the Agreement. A true copy of

the Wire Transfer reflecting the November 11, 2001 $50,000 investment is attached to this complaint as Exhibit C and made a part of it by this reference.

40. Defendants Peter Kim and Wesley Coddou further promised plaintiff that the investment involved absolutely no risk. Defendants Peter Kim and Wesley Coddou guaranteed that plaintiff's principal would be held in a trust and would be returned not more than 30 days from the date of the deposit. This guarantee is memorialized in a Trust Agreement & Guaranty executed by defendants Wesley Coddou and Peter Kim. A true copy of this Trust Agreement and Guaranty is attached to this complaint as Exhibit A and made a part of it by this reference.

41. Plaintiff has fully performed under the Agreement. However, soon after October 8, 2001 defendants defaulted on the Agreement by failing to make any payments as required under the Agreement. Defendants' entire obligation is now due, owing, and unpaid from defendants in the principal amount of $200,000 together with interest thereon from and after October 8, 2001, at the rate of 10% per annum. No part of such amount has been paid although plaintiff has demanded it from the defendants.

### Fifth Cause of Action
### (Breach of Contract)

42. Plaintiff realleges and incorporates by reference all allegations contained in the above paragraphs 1 through 41, inclusive.

43. Except to the extent prevented and excused by the breaches of the Defendants as alleged in this Complaint, Plaintiff has performed all things necessary on Plaintiff's part to be performed under the agreement described in paragraphs 1 through 42 above.

44. Defendants have breached the agreement in that they have paid failed to repay plaintiff.

### Sixth Cause of Action
### (Common Count)

45. Plaintiff realleges and incorporates by reference all allegations contained in the above paragraphs 1 through 44, inclusive.

46. On or about October 8, 2001, defendants became indebted to plaintiff in the agreed sum of $200,000 for principal borrowed.

47. Although Plaintiff has demanded payment of the amount borrowed, defendants have failed to pay plaintiff any money. Therefore, there is now due to plaintiff the sum of $200,000.00, together with interest thereon at the rate of 10% per annum from October 8, 2001.

WHEREFORE, plaintiff prays for judgment as follows:

1. For damages in the sum of $200,000;

2. For interest from and after October 8, 2001, to the date of judgment at the rate of 10% per annum;

3. For disgorgement in the amount of $200,000 plus prejudgment interest on that amount;

4. For civil penalties against defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], for the violations alleged herein.

5. For punitive damages;

//

//

6. For cost of suit herein incurred, including reasonable attorneys' fees; and

7. For such other and further relief as the court may deem proper.

Dated: January 24, 2003.    PAXTON ♦ O'BRIEN LLP

By _____
WILLIAM L. MARDER, Attorney for Plaintiff

# EXHIBIT A

## TRUST AGREEMENT & GUARANTY

**150,000 USD**

This Escrow Agreement & Guarantee is entered this 8th day of October, 2001 by and between Coddou & Coddou, a Professional Corporation, Trust, AND Stanner Air, Inc.

Whereas on the 8th day of October, 2001, ST. JOHN AEM, INC. AND STANNER AIR, INC. entered into a Joint Participation Agreement whereby STANNER AIR, INC. is obligated to deposit into a trust account the sum of One Hundred Fifty Thousand United States Dollars (150,000.00 USD) for purposes more specifically set forth in the Joint Participation Agreement.

Now therefore, the Law Firm of Coddou & Coddou, a Professional Corporation and Wesley S. Coddou, President, agree to hold the deposit in trust and to guarantee the return of the deposit not more than 30 days from the date of the deposit.

_____
Wesley S. Coddou

_____
Further Guaranteed by:
Peter Kim

_See Attached_
Notary

# EXHIBIT B

# JOINT PARTICIPATION AGREEMENT

This Joint Participation Agreement as the same may be amended or modified from time to time ("Joint Participation Agreement") is made and entered into as of October 8, 2001 by and between ST. JOHN AEM, INC. ("AEM") and STANNER AIR, INC. ("INVESTOR").

WHEREAS, the purpose of AEM and INVESTOR is to fund and administer economic development and humanitarian projects (the "Projects").

WHEREAS, the minimum principal sum of One Hundred Fifty Thousand United States Dollars ($150,000.00 USD) is required to initiate the process of funding the Projects.

WHEREAS, INVESTOR is capable of providing the sum required to initiate the process of funding the Projects.

WHEREAS, AEM is capable of effecting participation in a high yield private placement program (the "Program") to complete the Projects.

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements contained herein, the parties hereto hereby agree as follows:

Pg 1 TL

1. **Responsibilities.** INVESTOR shall deposit the principal sum of One Hundred Fifty Thousand United States Dollars ($150,000.00 USD) into a trust account styled, Coddou & Coddou, a Professional Corporation, Trust, to initiate the process of funding the Projects. AEM shall coordinate and effect participation in the program to complete the Projects. Further, AEM shall fund the following projects identified by the INVESTOR:

   A) Bangledesh Christian School Sponsorship for an amount up to Twenty Nine Million United States Dollars (29,000,000.00 USD); and

   B) Volunteer Health Professionals on the Island of Fiji for an amount up to Five Million United States Dollars (5,000,000.00 USD).

2. **Profit.** With respect to this provision, "Profit" means net profit of each program. The Profit to the INVESTOR shall be Fifty Percent (50%) per week for forty (40) weeks. Profit shares shall be paid weekly after initiation of the Program.

3. **Tax Matters.** AEM and INVESTOR shall be responsible for their own tax obligations.

4. **Expenses.** Party costs and expenses shall be borne by the party incurring the same. No further expenses shall be incurred by the INVESTOR beyond his own expenses.

5. **Notices.** Any notice or other communication required or permitted to be given under this Joint Participation Agreement by either party to the other party shall be considered as properly given if in writing and (a) delivered against receipt therefor, (b) mailed by registered or certified mail, return receipt requested and postage prepaid or (c) sent by telefax machine, in each case to the address or telefax number, as the case may be, set forth below:

    If to AEM:
        Wesley S. Coddou
        General Counsel
        St. John AEM, Inc.
        1001 West Loop South, Suite 220
        Houston, Texas 77027-9085
        Telephone:    713.993.0208
        Telefax:       713.993.0209

    If to INVESTOR:
        Ted L. Stephens DDS
        President
        Stanner Air Inc.
        10 Stephens Drive
        San Juan Bautista, California 95045
        Telephone:    831.623.4627
        Telefax:       831.623.4631

PRJ TLS

Delivery of any communication given in accordance with this Joint Participation Agreement shall be effective only upon actual receipt thereof by the party to whom such communication is directed. Either party to this Joint Participation Agreement may change the address to which communications are to be directed by giving written notice to the other party in the manner provided in this section.

6. **Non-Circumvention/Non-Disclosure.** All non-circumvention and non-disclosure rules set forth by the ICC Commission on International Commercial Practices are incorporated herein by reference. INVESTOR's and AEM's respective relationships with other persons and entities are the property of the introducing party and shall remain so for a period of five (5) years. The parties shall not disclose or publish this Agreement or matters ancillary to this Agreement or the identity of persons and entities necessary to carry out the purposes of this Agreement to persons or entities unrelated to this Agreement unless specifically required by law.

Pg 4 TL

7.  **Choice of Laws.** This Joint Participation Agreement is governed by the laws of the state of Texas. Venue and jurisdiction are mandatory in the state courts of Harris County, Texas.

8.  **Assignment.** This Joint Participation Agreement shall not be assigned by either party without the prior written consent of the other party.

9.  **Severability.** If one or more of the provisions hereof shall for any reason be held to be invalid, illegal or unenforceable in any respect under applicable law, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and this Joint Participation Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein, and the remaining provisions hereof shall be given full force and effect.

10. **Termination.** This Joint Participation Agreement may be terminated prospectively upon thirty (30) days written notice, EXCEPT, in the event that either party exercises its right of termination, then the profit sharing provisions of this Joint Participation Agreement shall survive termination until the programs existing at the time of termination are concluded. In the

event that AEM fails to fund the Projects within thirty (30) days after the date of this Joint Participation Agreement, then this Joint Participation agreement is terminated and funds returned to INVESTOR.

11. General. The section headings contained in this Joint Participation Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Joint Participation Agreement. This Joint Participation Agreement and any affidavit, certificate, instrument, agreement or other document required to be provided hereunder may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute but one and the same instrument. Unless the context shall otherwise require, the singular shall include the plural and vice-versa, and each pronoun in any gender shall include all other genders. The terms and provisions of this Joint Participation Agreement constitute the entire agreement between the parties hereto in respect of the subject matter hereof, and neither AEM nor INVESTOR has relied on any representations or agreements of the other, except as specifically set forth in this Joint Participation Agreement. This

Joint Participation Agreement or any provision hereof may be amended, modified, waived or terminated only by written instrument duly signed by the parties hereto. This Joint Participation Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective heirs, devisees, executors, administrators, personal representatives, successors, trustees, receivers and permitted assigns. This Joint Participation Agreement is for the sole and exclusive benefit of AEM and INVESTOR, and nothing in this Joint Participation Agreement, express or implied, is intended to confer or shall be construed as conferring upon any other person any rights, remedies or any other type or types of benefits.

IN WITNESS WHEREOF, the parties hereto have executed this Joint Participation Agreement to be effective as of the date first above written.

ST. JOHN AEM, INC.

_____
Wesley S. Coddou, General Counsel

STANNER AIR, INC.

_____
Dr. Ted L. Stephens DDS

7